IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jamie Dunn, | : | Case No. 1:21-cv-454 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **SUMMARY JUDGMENT ORDER** |
| Select Specialty Hospital – Cincinnati Inc., | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 22) Defendant seeks summary judgment on all of Plaintiff's claims. Plaintiff has filed a Response in Opposition (Doc. 28), and Defendant has filed a Reply (Doc. 31). The matter is now ripe. For the following reasons, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. Background

Plaintiff, Jamie Dunn, worked as a clinical liaison for the Defendant Select Specialty Hospital. In 2017, she gained custody of her grandson, who has a serious congenital heart defect. After the start of the Covid-19 pandemic, his doctor recommended that he avoid any gatherings outside the home, including daycare, due to his medical condition. Plaintiff requested FMLA leave through April 15, but received instead an unprotected leave of absence. When Plaintiff requested that her leave of absence be extended through April 30, she was told that she needed to return to work. Plaintiff informed Defendant that, due to day care closures, she would not be able to return. At that point Plaintiff was told that her position would be posted, but that she could move to PRN status, which would allow her to work some shifts if the Defendant needed shifts covered but did not guarantee full-time employment. While she agreed to move to

PRN status rather than resign, she never worked any shifts. Months later, Defendant formally terminated her employment.

## II. Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–587 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); see also *EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; see also *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on evidence upon which a reasonable jury could

return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

District courts can "decline[] to consider the merits of [a] claim" which the plaintiff fails to address in opposing a summary judgment motion. *Hicks v. Concorde Career College*, 449 F. App'x 484, 487 (6th Cir. 2011).

### III. Analysis

Plaintiff argues that genuine issues of material fact exist only as to Counts II, V, and VI of her complaint. Therefore, she has waived any objection to the Court granting summary judgment to Defendant as to Count I and both Counts IV.[1]

#### A. Associational Disability

In Count II of her complaint, Plaintiff alleges that Defendant terminated Dunn's employment due to her association with a disabled person. The Americans with Disabilities Act (ADA) protects not only people with disabilities but also those associated with people with disabilities. *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d. 482, 486 (6th Cir. 2011). However, the ADA does not require that employers provide accommodations to non-disabled workers. *Id.* Rather, it only prevents employers from refusing to hire or taking adverse action against a non-disabled worker due to her association with a disabled individual. *Id.*

Plaintiff argues that she was demoted to the PRN position because she needed to be on leave to care for her grandson. (Doc. 28 PageID 875.) However, assuming that this is the reason that Plaintiff was demoted, this does not violate the ADA. Plaintiff argues that this reason falls

---

[1] Plaintiff's complaint includes two Counts IV and no Count III.

3

into the "distraction" theory of associational ADA claims. However, Defendant did not rely on "unfounded fears that [Plaintiff] might be distracted." *Stansberry,* 651 F.3d at 488. Rather, it relied upon the fact that Plaintiff was not able to return to work at the end of the already granted leave. Defendant was not required to extend Plaintiff's leave period under the ADA.

### B. FMLA Retaliation

In Count VI, Plaintiff argues that Defendant took an adverse action against her for taking leave to which she was entitled under the FMLA. Defendant argues that Plaintiff was not entitled to FMLA leave and that demotion to PRN status was not an adverse employment action. "In order to establish an FMLA discrimination claim, [Plaintiff] must demonstrate that: (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Killian v. Yorozu Auto. Tenn., Inc.,* 454 F.3d 549, 556 (6th Cir. 2006).

#### 1. Entitlement to FMLA Leave

In order to be entitled to FMLA leave, Dunn must show that she needed to take leave to care for her grandson due to her grandson's serious health condition. 29 U.S.C. § 2612(a)(1)(C). Serious health condition is defined by the applicable regulations, which provide definitions for several types of serious health conditions. Dunn argues that her grandson was incapacitated by a chronic serious health condition as defined by the applicable regulation. 29 C.F.R. §§ 825.113 and 825.115 define "serious health condition" to include any period of incapacity resulting from a "chronic serious health condition," which is a health condition which requires periodic visits for treatment at least twice a year, continues over an extended period of time, and may cause

episodic rather than a continuing period of incapacity. Because Plaintiff's grandson suffers from a congenital heart condition, there is no question that his condition continues over an extended period of time. Plaintiff's grandson's doctor submitted two FMLA certification forms indicating that the grandson would require two visits per year for treatment and would suffer from periods of incapacity. (Doc. 20-16 PageID 424; Doc. 20-18 PageID 433.) As a result, there is at least a dispute of material fact regarding whether the grandson suffers from a chronic serious health condition.

Defendant argues that Plaintiff was not eligible for FMLA leave because the grandson was not incapacitated and because fear of contracting Covid-19 is not a basis for FMLA leave. Incapacity is defined to mean "inability to work, attend school or perform other regular daily activities due to the serious health condition." 29 C.F.R. § 825.113(b). The grandson's cardiologist submitted a note stating that, due to his heart condition, Plaintiff's grandson should avoid potential exposure to Covid-19, including by avoiding daycare. (Doc. 20-18 PageID 433.) An inability to attend daycare based on a doctor's recommendation is analogous to being unable to work or attend school. *See Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028, 1037 (M.D. Tenn. 1995) (holding that inability to attend daycare due to fever qualified as incapacity); *Bond v. Abbot Lab'ys*, 7 F.Supp.2d 967, 974 (S.D. Ohio 1998) (holding that a recommendation from a health care provider that an employee not work is evidence of incapacity). A doctor's medical recommendation stating that Plaintiff's grandson should not attend daycare suggests that he is incapacitated under the meaning of the statute.

Plaintiff's statements in her deposition that her grandson was capable of doing the same activities in March and April as in February of 2020 are not dispositive. Plaintiff was clear in her deposition that she understood her grandson's doctor as recommending that her grandson

5

avoid any activity like daycare where he would be interacting with large groups of people. (Doc. 20 PageID 233, 236.) While the grandson's physical condition may not have changed, a change in the environment around him might well leave him incapacitated under the definition of the regulation. 29 C.F.R. § 825.115(f) states that a person with asthma staying home because a doctor has advised him to do so whenever the pollen count exceeds a certain level would qualify for FMLA leave. This suggests that a change in environmental factors, when combined with an underlying health condition, could cause incapacity even if there is no change in the underlying medical condition.

Defendant cites several cases for the proposition that a desire to avoid contracting Covid-19 is not a basis for FMLA leave. However, these cases are distinguishable. In both cases, there was not a sufficient underlying health condition justifying the fear of Covid-19. *Callan v. AutoZoners, LLC,* No. 1:21-cv-1479, 2022 WL 204927, at *7 (N.D. Ohio January 24, 2022); *Milman v. Fieger & Fieger, P.C.*, 524 F.Supp.3d 604, 610 (E.D. Mich. 2021). While the plaintiff did argue in *Milman* that her son's earlier respiratory infection qualified as a sufficient underlying health condition, the court in that case rested its decision on the fact that her son has recovered from his infection well before the plaintiff requested FMLA leave. *Id.* Conversely, as explained above, there is evidence that Plaintiff's grandson suffers from a chronic serious health condition. As a result, reasonable jury could certainly find that Plaintiff's grandson suffered from a serious health condition.

### 2. Defendant Knew That Plaintiff Was Exercising Her FMLA Rights

The notice requirement in FMLA cases is not a high bar. "[T]he critical question is whether the information imparted to the employer is sufficient to reasonably appraise it of the employee's request to take time off for a serious health condition." *Brohm v. JH Properties,*

*Inc.*, 149 F.3d 517, 523 (6th Cir. 1998) (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir.1995)). An employee need not even mention the FMLA. *Id.*

Defendant argues that it believed, at least for the period after April 15th, that Plaintiff was requesting leave not for her grandson, but rather for her healthy son due to day care closures. Plaintiff did send an email on March 31 to Defendant suggesting that daycare closures left her unable to find childcare for her healthy son, and that is why she was requesting leave. (Docs. 20-21, 20-22.) However, Plaintiff stated in her deposition that she had later called Lauren Alexander, an HR director, and Karen Patel, the CEO, and informed them that she could likely find someone to care for her son, but needed leave to care for her grandson due to his medical condition and his need to be quarantined. (Doc. 20 PageID 225–27). This is sufficient to create a material issue of fact as to whether Defendant had notice that the post-April 15 leave was to care for her grandson.

### 3. Defendant Took Adverse Employment Action Against Plaintiff[2]

Adverse employment action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Keeton v. Flying J, Inc.*, 429 F.3d 259, 263 (6th Cir. 2005) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). After Plaintiff informed Defendant that Plaintiff could not return on April 16, Defendant gave Plaintiff three choices: she could return to work on the 16th, resign, or be moved to PRN status, where, rather than being employed full-time, she could work shifts as needed. (Doc. 27-2 PageID 764).

---

[2] Defendant argues that, due to the way the Amended Complaint is worded, Plaintiff can argue only that her official termination months later was an adverse employment action. However, this is not the case. Plaintiff stated in her Amended Complaint that she was demoted to PRN status. The facts in her complaint support the position that she now takes at the summary judgment stage. This is sufficient. *See Colonial Refrigerated Transp., Inc., v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983). Furthermore, the language of the complaint suggests that Plaintiff is referring to an event in March or April of 2020 when she complains of termination. (Doc. 12 PageID 99).

Rather than being guaranteed full-time employment, she would only be able to work as many hours as Defendant had a need. (*Id.* at PageID 767.) While Defendant had a need for 40 hours a week at the time they offered her PRN status, it could not guarantee her full-time employment moving forward. (*Id.*) As a result, moving to PRN status risked reduced benefits and pay if she was not able to work 40 hours a week. (*Id.* at 765, 771.) A reasonable juror could conclude that the shift from a permanent, full-time position to a position where Plaintiff would be able work only as needed by the Defendant, with an associated reduction in benefits and pay, is an adverse employment action.

### 4. There Was a Causal Connection

Defendant was quite clear why Defendant was moved to PRN status. It is because she did not return to work on April 16. (Doc. 27-2 PageID 764.) Defendant told Plaintiff that she could return on April 16, move to PRN status, or resign. This suffices to demonstrate a causal connection between Plaintiff's attempt to take FMLA leave through the end of April and her demotion to PRN status. As a result, Plaintiff's FMLA retaliation claim survives summary judgment.

### C. FMLA Interference

In Claim V, Plaintiff argues that Defendant denied her FMLA leave to which she was entitled. Defendant argues that Plaintiff was not entitled to FMLA leave. In order to establish a claim for FMLA interference, Plaintiff must show entitlement to FMLA leave, notice to the employer, and that the employer denied her FMLA benefits. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). As explained above, Plaintiff has established the first two elements. Plaintiff can also show that Defendant denied her FMLA benefits. While Defendant argues that it provided more than the required twelve weeks of leave to Plaintiff, this is not the

8

case. The job Plaintiff held when she requested FMLA leave was a full-time position. Defendant moved Plaintiff to a different position and posted her former position as vacant. (Doc. 27-2 PageID 768.) The purpose of FMLA leave is to allow the employee to return to the position which she occupied prior to taking leave. *Edgar*, 443 F.3d at 507. While Defendant may have allowed Plaintiff to take leave and return as a PRN nurse, it did not allow her the option of taking leave after April 15 and returning to her previous, full-time position. A reasonable jury could conclude that Defendant interfered with Plaintiff's FMLA leave.

## IV. Conclusion

While Plaintiff ultimately may not be able to establish that her grandson was incapacitated or that she provided proper notice at trial, that is not the question before the Court. Material disputes of fact remain as to whether Defendant interfered with or retaliated against Plaintiff for her exercise of her FMLA rights. As a result, the Court **GRANTS** summary judgment for the Defendant with respect to Counts I, II, and both Counts IV, but **DENIES** summary judgment with respect to Counts V and VI.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court